**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:17CV114**

| | | |
|---|---|---|
| **DARRELL WAYNE MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (# 11, 15).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, Plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

## I.    Procedural Background

On May 1, 2013, Plaintiff protectively filed an application for supplemental security income. (Transcript of Administrative Record ("T.") 17.) Plaintiff alleged a disability onset date of January 1, 2013.[2] (T. 17.) The Social Security Administration denied Plaintiff's claim initially on December 3, 2013. (T. 17.) The claim was denied upon reconsideration on April 8, 2014. (T.

---

[1] Plaintiff's motion is styled as a Motion for Judgment on the Pleadings (# 11). Pursuant to the December 16, 2013 Social Security Briefing Order, Plaintiff was directed to file a Motion for Summary Judgment and supporting Memorandum of Law. Therefore, the Court construes Plaintiff's motion as one seeking summary judgment.

[2] Plaintiff, acting on the advice of counsel, proposed amending his alleged disability onset date to November 17, 2013, so as to "better the chances for a favorable decision." (T. 17.) Because the amended onset date bears no discernable nexus to the status of Plaintiff's impairments, the ALJ denied Plaintiff's proposal. (T. 17.)

17.)  On May 12, 2014, Plaintiff filed a written request for a hearing.  (T. 17.)

On April 28, 2016, an Administrative Law Judge ("ALJ") conducted a video hearing.  (T. 17.)  Plaintiff appeared in Wilkesboro, North Carolina, and the ALJ presided over the hearing from Greensboro, North Carolina.  (T. 17.)  Nancy N. Hughes, a vocational expert ("VE"), testified at the hearing via telephone.  (T. 17.)  Plaintiff was represented by William Coleman, an attorney.  (T. 17.)

On August 4, 2016, the ALJ denied Plaintiff's claim in a written decision.  (T. 17-28.)  Plaintiff requested a review of the ALJ's decision.  (T. 7.)  On June 6, 2017, the Appeals Council denied the request for review.  (T. 7-9.)  On June 30, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision.  See Compl. (# 1).

## II.    Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).  Under the five-step sequential evaluation, the Commissioner must consider each of the following, in sequence: (1) whether  the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or medically equal the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform

any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant

is not disabled and deny the application for disability benefits.  Mascio, 780 F.3d at 635; Monroe,

826 F.3d at 180.

## III.    The ALJ's Decision

In his August 4, 2016 decision, the ALJ ultimately concluded that Plaintiff was not disabled

under section 1614(a)(3)(4) of the Social Security Act.  (T. 28.)  In reaching this conclusion, the

ALJ made the following specific findings:

(1)    The claimant has not engaged in substantial gainful activity since May 1, 2013, the application date (20 C.F.R. § 416.971 et seq.).[3]

(2)    The claimant has the following severe impairments: osteoarthritis and allied disorders, as well as chronic obstructive pulmonary disease (also appearing in the record as emphysema) (20 C.F.R. § 416.920(c)).[4]

(3)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

(4)    The claimant has the RFC to perform medium work as defined in C.F.R. § 416.967(c), except he can occasionally lift 50 pounds, frequently lift 25 pounds, and carry the same amount.  He can sit for six hours, stand for six hours, and walk for six hours out of an eight-hour workday.  The claimant can push and pull as much as he can lift and carry.  There are no limitations with right or left foot controls and right or left hand controls.  The claimant has no limits with reaching overhead and reaching in all other directions. The claimant has no limits in his ability to handle, finger, and feel with the right and left extremities.  The claimant has the ability to frequently climb ramps and stairs, frequently climb ladders, ropes, or scaffolds, frequently balance, frequently stoop, frequently kneel, frequently crouch, and frequently crawl.  The claimant has no limit to his ability to communicate or see.  The claimant has no limit to exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, weather, humidity, and wetness.  He can occasionally be exposed to dust, odors, fumes, and pulmonary irritants.  The claimant can tolerate frequent exposure to extreme cold, extreme heat, and vibration.  The claimant has no limitation on

---

[3] The ALJ found that Plaintiff worked after the application date, but this work activity did not rise to the level of substantial gainful activity.  (T. 19.)
[4] The ALJ found that Plaintiff had the following non-severe impairments:  right elbow tendonitis, high blood pressure, high cholesterol, depression/affective disorder, anxiety, and a history of alcohol and drug abuse.  (T. 19-20.)

exposure to very loud noise. The claimant has no limit to his ability to understand, remember, and carry out instructions, use judgment, and interact appropriately with supervisors, coworkers and the public at large. The claimant has no limitation to dealing with changes in the work setting. Time off task can be accommodated by normal breaks.

(5)     The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).[5]

(6)     The claimant was born on November 17, 1958, and he was 54 years old, which is defined as an individual closely approaching advanced on the date the application was filed. The claimant subsequently changed age category to advanced age (20 C.F.R. § 416.963).

(7)     The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

(8)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(9)     Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)).[6]

(10)    The claimant has not been under a disability, as defined in the Social Security Act, since May 1, 2013, the date the application was filed (20 C.F.R. § 416.920(g)).

(T. 17-28.)

## IV.    Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in

---

[5] The ALJ found that Plaintiff's work as a cabinetmaker constituted past relevant work. (T. 26.)
[6] The VE testified that Plaintiff would be able to perform the requirements of the following medium exertional representative occupations: (1) kitchen helper, which has 200,000 jobs in the national economy; (2) grocery bagger, which has 125,000 jobs in the national economy; and (3) dining room attendant, which has 60,000 jobs in the national economy. (T. 27.)

that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>accord</u> <u>Monroe</u>, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Craig</u>, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. <u>Id.</u>

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." <u>Id.</u> Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he was not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. <u>Id.</u>

## V.  Discussion[7]

### A.  The ALJ did not err in finding that Plaintiff has the RFC to perform a reduced range of medium work.

In his sole assignment of error, Plaintiff argues that the ALJ erred in finding that he has the RFC to perform a reduced range of medium work. Pl.'s Mem. Supp. (# 12) at 5-9. In particular, Plaintiff contends that his credible testimony illustrates that chronic, severe pain precludes him from performing medium work, and his testimony is supported by the record.[8] <u>Id.</u> at 6-7. Plaintiff further contends that the ALJ erred by relying on his activities of daily living. <u>Id.</u> at 8-9. Plaintiff concludes that the ALJ's decision denying him benefits must be reversed. <u>Id.</u> at 9.

---

[7] Throughout this order, the undersigned has cited to the Code of Federal Regulations as it stood on the relevant date, the date of the ALJ's decision, which is August 4, 2016. <u>See</u> (T. 28).

[8] Plaintiff notes that if the ALJ had found that he could perform light work, a finding of disabled would have been directed under Rule 202.02 of the Medical-Vocational Guidelines. Pl.'s Mem. Supp. (# 12) at 8.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations. 20 C.F.R. § 416.945(a)(1). The RFC determination is an administrative decision reserved for the Commissioner. 20 C.F.R. § 416.927(d)(2); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

SSR 96-8p provides that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Monroe, 826 F.3d at 189 (quoting Mascio, 780 F.3d at 636). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In the instant case, as noted above, the ALJ found that Plaintiff could perform a reduced range of medium work.[9] See (T. 22). The ALJ noted that Plaintiff alleged disability in part due to emphysema and a steel rod in his leg. (T. 23.) The ALJ also noted that Plaintiff testified he is unable to work for greater than 20 minutes, unable to stand for greater than an hour, and unable to lift more than 10-15 pounds. (T. 23.) Finally, the ALJ noted that Plaintiff alleged that he experiences shortness of breath even with the use of an inhaler. (T. 23.)

Next, the ALJ engaged in a credibility determination and found as follows:

[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(T. 23.)

---

[9] A full range of medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

The ALJ noted the following: Plaintiff has a history of chronic pain resulting from osteoarthritis, but his clinical exams reveal a well-preserved ability to perform musculoskeletal functions. (T. 23.) Plaintiff is status post intramedullary rod screw fixation in the right lower extremity from a motor vehicle accident in 1992. (T. 23.) Plaintiff's clinical exams, however, are generally unremarkable. (T. 23.)

In February 2014, physical consultative examiner Julie Colantoni, M.D. observed a normal gait without benefit of an assistive device and a negative straight leg raising test. (T. 23.) Dr. Colantoni found that Plaintiff had a full range of motion, exception for his right hip, which had zero degrees of internal rotation and ten degrees of external rotation. (T. 23.) Plaintiff's motor function measured 5/5 in the lower extremities. (T. 23.) Imaging of the right hip, also from February 2014, showed no complication of the hardware, no significant degenerative change, and a normal hip. (T. 23.) The ALJ concluded that because there was a lack of correlation between the clinical and diagnostic evidence, a restriction on foot controls was not supported. (T. 23.)

The ALJ noted that Plaintiff had been treated under the labels of chronic pain syndrome or chronic pain due to trauma, yet the record does not show that Plaintiff suffers appreciable functional limitations. (T. 23.) For example, Plaintiff had a normal gait. (T. 23.) In November 2014, a provider found that Plaintiff had a normal gait, an ability to stand without difficulty, normal muscle tone and no atrophy of the right lower extremity, negative straight leg raising tests bilaterally, and non-tender paraspinal musculature with normal strength. (T. 23.) The ALJ noted that an isolated finding of bony tenderness at the lumbosacral spine was noted in November 2015, but Plaintiff demonstrated a full range of motion in all planes and normal paraspinal muscle strength. (T. 23.) The ALJ also noted that primary care providers found intact sensation at the extremities across all encounters with a corresponding neurological exam. (T. 23.) The ALJ noted

8

that although treatment providers found that osteoarthritis impacted Plaintiff's hips, knees, spine, and lower extremities, the intact findings suggest preserved musculoskeletal functioning. (T. 23.)

The ALJ concluded that the above-stated findings render Plaintiff's allegations "less persuasive." (T. 23.) In addition, the ALJ noted that Plaintiff reportedly ambulates with a cane, but there is no indication that a treating source prescribed an assistive device. (T. 23.) Also, Plaintiff claims that he is unable to stand for periods greater than two hours, but the absence of atrophy in the right lower extremities, as well as the above-noted gait and strength findings, suggest a much greater functional ability. (T. 23-24.) Plaintiff's pain allegations were documented, but his pain medication regimen decreased over time.[10] (T. 24.) The ALJ determined that the reduction in pain medication and noted stability stood in sharp contrast with Plaintiff's testimony that he frequently falls and is largely confined to lying or sitting because of his pain symptoms. (T. 24.)

The ALJ concluded that due to apparent pain control, as inferred from the stable pain prescription regimen, any time off task for pain-related symptoms could be accommodated by normal breaks. (T. 24.) The ALJ concluded that Plaintiff could perform medium work, but the ALJ included postural limitations to accommodate for any residual pain symptoms. (T. 24.)

As for Plaintiff's pulmonary problems, the ALJ concluded that the evidence did not reflect the frequency or intensity of the symptoms alleged. (T. 24.) For example, only two instances of abnormal pulmonary functioning were documented in the 12 months prior to the protective filing date and beyond. (T. 24.) In February 2014, Dr. Colantoni interpreted a pulmonary function study as reflecting "mild obstruction" and no improvement with bronchodilator administration. (T. 24.) Dr. Colantoni determined that Plaintiff was short on breath on exertion and easily fatigued,

---

[10] The ALJ noted that in November 2013, Plaintiff was taking a combination of Norco, Oxycodone, Arthrotec, and Tramadol. (T. 24.) In July 2014, Plaintiff's regimen was reduced to Arthrotec and Oxycodone. (T. 24.) Plaintiff's regimen has remained unchanged since that time. (T. 24.)

Plaintiff had lungs that were clear to auscultation bilaterally. (T. 24.) In March 2015, Plaintiff demonstrated an inappropriate shortness of breath on a treadmill stress test. (T. 24.) Julian Thomas, M.D. concluded that Plaintiff's dyspnea was likely due to chronic obstructive pulmonary disease and reflected only a "mildly impaired functional capacity." (T. 24.)

The ALJ concluded that Plaintiff's clinical exams and respiratory treatment were otherwise unremarkable. (T. 24.) From April 2013 through March 2016, primary care providers documented normal breath sounds and unlabored respirations. (T. 24.) Plaintiff's treatment regimen has been limited to an inhaler, which has been dispensed at the same dose since at least November 2013. (T. 24.) There is no evidence that Plaintiff required emergent treatment for breathing problems, intravenous bronchodilator administration, or prolonged inhalation bronchodilator therapy in a hospital, emergency room, or an equivalent setting. (T. 24.) The ALJ found that the evidence supported Andrew Pinkerton, PA-C's opinion in January 2015 that Plaintiff's pulmonary obstructive disease is "stable" with his medical regimen. (T. 24.) The ALJ concluded that Plaintiff's respiratory problems do not cause corresponding exertional limitations. (T. 24.) To accommodate Plaintiff's episodic symptomology, the ALJ limited Plaintiff to only occasional exposure to dust, odors, fumes, and pulmonary, as well as frequent exposure to extreme cold and extreme heat. (T. 24.)

Plaintiff argues that the ALJ erred by relying on his activities of daily living. Pl.'s Mem. Supp. (# 12) at 8-9. The ALJ noted that the record contained references to activities, which are disproportionate to the limited lifestyle Plaintiff presented during his hearing before the ALJ. (T. 24.) For example, in October 2013, Plaintiff sought treatment for a possible fractured clavicle following an injury he sustained while "moving material on a truck." (T. 24.) Also, in July 2014, Plaintiff reported that his medication regimen allowed him to work with his brother on a daily

basis. (T. 24.) The ALJ noted that Plaintiff has repeatedly denied dyspnea or shortness of breath, yet Plaintiff has continued to smoke despite medical advice to the contrary.[11] (T. 25.) The ALJ found that the evidence did not generally support Plaintiff's allegations. (T. 25.)

The ALJ did not err in considering Plaintiff's daily activities as a relevant factor in evaluating the intensity and persistence of his symptoms. See 20 C.F.R. § 416.929(c)(3)(i); Mastro, 270 F.3d at 179-80 (holding that the ALJ properly considered the claimant's reported daily activities when evaluating her RFC); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that the claimant's pattern of daily activities suggested that he was not disabled from working); Christian v. Colvin, No. 4:15-CV-41, 2016 WL 4056210, at *8 (E.D. Va. May 6, 2016) (finding that the ALJ did not err in considering that the claimant could read, go to church, go out to eat, take on-line classes, and play with her grandson).

When formulating Plaintiff's RFC, the ALJ considered and relied, in part, on the functional assessment made by State agency medical consultant, Dakota Cox, M.D. (T. 25.) Dr. Cox limited Plaintiff to medium work. (T. 25.) The ALJ gave Dr. Cox's opinion "partial weight" for two reasons. (T. 25.) First, Dr. Cox failed to consider Plaintiff's respiratory problems. (T. 25.) Second, Plaintiff's right lower extremity would cause some limitations on postural activities. (T. 25.)

In sum, the Court declines Plaintiff's invitation to reweigh the evidence of record. See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute

---

[11] A claimant's failure to comply with medical treatment, without a good reason, precludes the claimant from being found disabled. See 20 C.F.R. 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work[.]"); see also Sias v. Secretary of Health and Human Services, 861 F.2d 475, 480 (6th Cir. 1988) ("Each of us faces myriads of choices in life, and the choices we make, whether or not we like it, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege—but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.").

our judgment for that of the [ALJ].") (quotation omitted and alteration in original)). Moreover, Plaintiff has not met his burden of establishing that he is more limited than the ALJ found. <u>See</u> <u>Creegan v. Colvin</u>, No. 1:13CV5, 2014 WL 3579659, at *3 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish [his] RFC by demonstrating how [his] impairment impacts [his] functioning."); <u>see also</u> <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Consequently, Plaintiff's sole assignment of error is overruled.

## VI. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (# 11) is DENIED, and the Commissioner's motion for summary judgment (# 15) is GRANTED.

Signed: July 24, 2018

Dennis L. Howell
United States Magistrate Judge